IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LOGAN M. BARNHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 17-0249-CG-MU |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Logan M. Barnhart brings this action, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), seeking judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner") denying his claim for

Disability Insurance Benefits ("DIB"). The parties have consented to the exercise

of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all

proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28

U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a

United States Magistrate Judge conduct any and all proceedings in this case, …

order the entry of a final judgment, and conduct all post-judgment

proceedings.")). *See also* Doc. 19. Upon consideration of the administrative

record, Barnhart's brief, the Commissioner's brief, all other documents of record,

and oral argument, it is determined that the Commissioner's decision denying

benefits should be affirmed.[1]

## I.  PROCEDURAL HISTORY

On January 16, 2013, Barnhart applied for a Period of Disability and DIB,

under Title II of the Social Security Act, alleging disability beginning on October

1, 2011. (Tr. 325). After his application was denied at the initial level of

administrative review on March 7, 2013, Barnhart requested a hearing by an

Administrative Law Judge (ALJ). (Tr. 184, 192). After an initial hearing was held

on July 23, 2014, and a supplemental hearing was held on April 14, 2015, the

ALJ issued an unfavorable decision denying Barnhart's claim on the basis that he

was not disabled under the relevant provisions of the Act. (Tr. 74-97). Barnhart

appealed the ALJ's decision to the Appeals Council, which denied his request for

review on April 10, 2017. (Tr. 1-7).

After exhausting his administrative remedies, Barnhart sought judicial

review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The

Commissioner filed an answer and the social security transcript on August 31,

2017. (Docs. 7, 8). On September 29, 2017, Barnhart filed a brief in support of

his claim. (Doc. 9). The Commissioner filed her brief on January 12, 2018. (Doc.

15). Oral argument was held before the undersigned Magistrate Judge on

January 30, 2018. (Doc. 18). The case is now ripe for decision.

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh
Circuit Court of Appeals. *See* Doc. 17 ("An appeal from a judgment entered by a
Magistrate Judge shall be taken directly to the United States Court of Appeals for
the judicial circuit in the same manner as an appeal from any other judgment of
this district court.").

## II. CLAIM ON APPEAL

Barnhart alleges that the ALJ's decision to deny him benefits is in error because the ALJ's Residual Functional Capacity (RFC) assessment was not supported by substantial evidence. (Doc. 9 at pp. 1- 2).

## III. BACKGROUND FACTS

Barnhart was born on September 29, 1985, making him 27 years old at the time he filed his claim for benefits. (Tr. 356). Robinson alleged disability due to a brain tumor/cancer, paralysis in his dominant hand, and anxiety. (Tr. 360). He graduated from high school, attending regular education classes, and completed two years of college. (Tr. 361). He worked as an inventory recounter from February 2008 until December 2010, when he stopped working to attend college. (Tr. 360-61). He did not work during 2011 and 2012, but began working part-time as a delivery driver for Papa John's Pizza on December 23, 2013. (Tr. 79). In October of 2011, he was diagnosed with a brain tumor. (Tr. 82). He underwent surgery to remove the tumor, but did not require chemotherapy or radiation. (*Id.*). As a result of the tumor and/or surgery, he has residual problems with his right upper extremity, as well as memory and cognitive issues. (*Id.*).

Barnhart takes care of his own personal care, but he does have some difficulty using his right hand for things such as buttoning, hair care, and shaving. (Tr. 373-74). He is able to cook meals using his left hand, mow the lawn, do laundry, and cleaning. (Tr. 374). He can count change, handle a savings account, and use a checkbook/money orders, but has some difficulty handling money with his right hand. (Tr. 375-76). He is able to drive and go out alone. (Tr.

375). He goes outside at his home on a daily basis. (*Id*.). He spends time with others talking, eating, gaming, and watching television on a regular basis. (Tr. 376). He enjoys watching television, gaming, and drawing. (*Id*.). He stated in his Function Report that he can pay attention for a long while, can follow written and oral instructions pretty well, can handle changes in routine pretty well, can handle stress, and gets along with authority figures very well. (Tr. 377-78). After conducting the hearings, the ALJ made a determination that Barnhart had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 77-93).

## IV. ALJ'S DECISION

The ALJ made the following relevant findings in her September 25, 2015 decision:

> **5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b). The claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 8 hours each during an 8 hour workday; no use of the right upper extremity to push and pull; no crawling; frequently climb ramps and stairs; no climbing of ladders, ropes or scaffolds; no requirement for bilateral manual dexterity; no reaching overhead with the right upper extremity; no fingering with the right upper extremity; occasionally reach in all other directions with the right upper extremity; occasionally handle with the right upper extremity; frequently feel with the right upper extremity; able to perform simple routine tasks involving no more than simple, short instructions; no requirement to hand write instructions or write reports; and able to sustain concentration and attention for 2 hour periods.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

* * *

The claimant alleges that his ability to work is limited by a brain tumor/cancer, paralysis in the dominant hand caused by the brain tumor, and anxiety/stress. The claimant reported he was prescribed Dexamethasone to prevent swelling in his brain. According to the claimant, he stopped working on December 31, 2010 because he was going to college. As of August 2011, the claimant had completed 2 years of college (Exhibits 2E and 9E). He reported no medication side effects. (Exhibit 9E).

At the initial hearing, the claimant testified that he was in college and was diagnosed with a brain tumor around October 2011. He underwent surgery, but he did not require chemotherapy or radiation. The claimant reported residual problems with his right upper extremity along with memory/cognitive problems. The claimant testified he was seeking no mental health treatment, and he had been to the vocational rehabilitation counselor only one time. The claimant is working part-time for 8-16 hours a week as a delivery driver, and the claimant testified he received accommodations at work. The claimant failed, however, to provide any documentation to support his claims regarding accommodations. The claimant stated he was working on improving strength in the right hand through exercises.

At the supplemental hearing after the consultative exams, the claimant testified he was still working as a delivery driver on a part time basis, but he was unable to work the dough to make pizzas and had difficulty with operating the oven for long periods. The claimant indicated he used the left upper extremity to drive and was able to hold a pen in the right hand. He has no restrictions on his driver's license, and he performs some chores at home including small loads of laundry and making simple meals. The claimant visits with friends and uses the internet. He uses the mouse and types primarily with his left hand. The claimant acknowledged he did not perform the physical therapy

exercises for his right upper extremity as often as he should. He also testified he had not returned to vocational rehabilitation. The claimant did not obtain his job with Papa John's Pizza through vocational rehabilitation, and he also testified that he was not looking to return to college.

The claimant is status post craniotomy for brain lesion with decreased use of right upper extremity, which results in the limitation on his ability to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 8 hours each during an 8 hour workday; no use of the right upper extremity to push and pull; no crawling; frequently climb ramps and stairs; no climbing of ladders, ropes or scaffolds; no requirement for bilateral manual dexterity; no reaching overhead with the right upper extremity; no fingering with the right upper extremity; occasionally reach in all other directions with the right upper extremity; occasionally handle with the right upper extremity; frequently feel with the right upper extremity; and no requirement to hand write instructions or write reports. The claimant's depression and ADD result in the limitation on his ability to perform simple routine tasks involving no more than simple, short instructions; and sustain concentration and attention for 2-hour periods.

* * *

The claimant also saw Roger Ove, M.D., a radiation oncologist, for follow up after his surgery. On November 29, 2011, Dr. Ove noted the claimant's symptoms prior to the surgery had largely resolved, but he still had some persistent weakness of his right upper extremity.

* * *

The claimant saw Dr. Martino and Dr. Ove in the Neuro-Oncology Clinic on March 29, 2012. Dr. Martino noted the claimant complained of anxiety and stress headaches, and Dr. Martino noted the anxiety improved immediately when the MRI findings were discussed showing no evidence of progression. The claimant was attending physical therapy for his right hand weakness (Exhibit 6F). Dr. Ove noted the claimant reported no significant symptoms but had persistent right extremity neurological deficit. There was evidence of an objective strength deficit in the right upper extremity but no sensory deficit was noted (Exhibit 4F).

The claimant underwent nine physical therapy/occupational therapy visits for his right hand between February 9, 2012 and May 30, 2012. The claimant reported having difficulty writing and soreness with use of the right hand. At the initial evaluation, the claimant had difficulty isolating fine motor skills and had no digit abduction or adduction. The May 2, 2012 visit noted the claimant reported improvement when using his right hand for handwriting. On May 16, 2012, the claimant had improved timeliness when writing the alphabet and numbers with the right hand, and the occupational therapist reported improvement in the claimant's fine motor skills. The claimant was given home exercises to continue after his May 30, 2012 discharge from therapy (Exhibit 7F).

On August 28, 2012, an MRI showed stable postsurgical changes of the left frontal and parietal lobes without evidence of tumor recurrence (Exhibits 4F and 5F). On August 30, 2012, the claimant told Dr. Martino that he had been doing well and was seeking employment. Dr. Martino noted the MRI from August 28 2012 was stable without recurrence of the lesion. The claimant had improved ambulation due to improved strength in the right lower extremity, and he demonstrated improved grip strength in the right hand, although it continued to be weaker than the left. The claimant also saw Dr. Ove on August 30, 2012. The claimant reported he was doing relatively well and had no new neurological problems. Dr. Ove noted the claimant had made some improvement with physical therapy, but the claimant continued to have some persistent fine motor touch problems with his right upper extremity. The physical exam noted no pronator drift with normal proprioception and coordination. The claimant demonstrated grossly intact strength and sensation (Exhibit 6F).

* * *

The April 8, 2013 MRI showed no evidence of progression and no recurrence of the tumor (Exhibit 6F). The claimant presented to Dr. Martino on April 11, 2013. The claimant reported he was working at PNC residential photography. The claimant also reported continued difficulty using his right hand, and he stated he was using the left hand to type. There was noted improvement in the claimant's right hand flexion and contracture. The claimant exhibited good memory and improved grip strength in the right hand, although it continued to be weaker than the left. Dr. Ove's April 11, 2013 visit also noted no

evidence of recurrent disease. There was no progression of symptoms, and the claimant had concluded therapy with some improvement noted. The claimant reported shaking when raising his right hand over his head along with mood swings (Exhibit 6F).

* * *

The representative submitted evidence from vocational rehabilitation after the initial hearing, which included an evaluation with Blaine Crum, Ph.D. Dr. Crum noted the claimant reported having difficulty using his right arm, including difficulty raising his right hand above his head. The claimant also reported to Dr. Crum that he had memory problems and difficulty organizing his thoughts, writing things out by hand, note taking, maintaining attention/concentration, and test anxiety. The claimant reported he was currently employed by Papa John's Pizza as a delivery driver. The claimant also reported that he enjoyed reading, watching videos, and playing video games. The claimant was administered several tests, including the Brown Attention Deficit Disorder Scales (Brown), Career Assessment Inventory, Wechsler Adult Intelligence Scale (WAIS-IV), and Woodcock-Johnson Tests of Achievement (WJ-111ACH). (Exhibit 12E).

On the WAIS-IV, the claimant achieved a Verbal Comprehension Index Score of 107 (Average), a Perceptual Reasoning Index Score of 117 (High Average), a Working Memory Index Score of 92 (Average), a Processing Speed Index Score of 97 (Average), and a Full Scale IQ Score of 106 (Average). Dr. Crum opined that the claimant's general cognitive ability was within the average range of intellectual functioning, as measured by the Full Scale IQ. According to Dr. Crum, the claimant's overall thinking and reasoning abilities exceeded those of approximately 66% of his peers (Exhibit 12E).

Dr. Crum diagnosed the claimant with residual problems with attention due to a brain tumor and limited use of the right hand. Dr. Crum noted that the testing results suggested the claimant had difficulty with forgetfulness and recall of learned material. The claimant also demonstrated poor abstract thinking skills and poor short-term auditory memory. Dr. Crum also noted that the claimant demonstrated poor manual dexterity with the right hand and difficulty writing simple sentences with speed due to using the left hand. The claimant had difficulty performing simple addition, subtraction, and multiplication problems with speed

due to using the left hand (Exhibit 12E).

On December 8, 2014, the claimant underwent the psychological exam with John W. Davis, Ph.D. Dr. Davis noted the claimant drove to the evaluation. The claimant reported to Dr. Davis that he was unable to maintain employment due to lack of functioning in his right hand. He also reported additional stressors related to anxiety over his financial situation. He did not complain of memory problems or a cognitive impairment. The claimant stated he had been working at Papa John's pizza as a delivery driver for over a year. Dr. Davis noted the claimant exhibited no unusual gait or posture abnormalities. There were no unusual mannerisms, tics, or gestures noted by Dr. Davis. The claimant was oriented to person, place, and time. The claimant was able to handle Serial 7's, make change, do simple arithmetic and count backwards from 20 to 1 without difficulty. He was able to spell "world" backwards. Dr. Davis opined that the claimant exhibited no indications of deficits in his overall concentration or attention. The claimant's memory was intact. There were no loose associations and no tangential or circumstantial thinking was noted. Dr. Davis noted the claimant has normal social relationships with his family and peers. Dr. Davis estimated that the claimant functioned in the average range of intelligence. Dr. Davis' diagnostic impression included depression related to his medical condition (Exhibit 9F).

Dr. Davis also completed a mental assessment. Dr. Davis opined that the claimant would have moderate restrictions in his ability to interact with the general public, co-workers, and supervisors and in his ability to respond to usual work situations and changes in routine setting. He would also be moderately limited in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work related decisions (Exhibit 9F).

The claimant underwent a consultative physical exam with John G Yager, M.D. on December 12, 2014. Dr. Yager noted the claimant alleged problems with using his right hand after having surgery for a brain tumor. Dr. Yager reported the claimant was followed with serial MRI scans, the last of which was a year ago. The claimant reported he lost his insurance and was no longer able to afford to have the MRIs performed on a yearly basis. Dr. Yager noted, however, that the last MRI scan did not show any tumor recurrence. On neurological exam, the claimant's visual fields were full to confrontation. Extraocular muscles were intact.

The face was fairly symmetric. His tongue protruded in the midline. The claimant's speech was normal. His facial sensation was normal to vibration and cool sensation. The claimant had slightly decreased vibratory sense of the right hand compared to the left. His sensation was normal and equal in the lower extremities. The claimant's finger-to-nose was performed better on the left than the right as was finger opposition. Dr. Yager reported that the claimant was limited in his ability to oppose his fingers to the thumb in the right hand and was unable to get his little finger opposed to the thumb on the right hand. Motor strength was 4/5 in the right upper extremity and was 5/5 otherwise, including the right lower extremity. The claimant ambulated with a narrow base with a good arm swing bilaterally and no limp. He was able to heel-and-toe walk. He used his left hand when asked to tie and untie his shoes. The claimant could fixate with the right hand. Dr. Yager's clinical impression was that the claimant had a brain tumor in the left hemisphere, with resultant decreased use of the right upper extremity with some hyperreflexia and ataxia of his dominant hand. Dr. Yager opined that the claimant was limited to sedentary activities and would have difficulty with right hand fine motor skills (Exhibit 10F).

Dr. Yager completed a Medical Source Statement and opined that the claimant was able to lift up to twenty pounds frequently and fifty pounds occasionally using the left hand, and he was able to carry up to twenty pounds frequently and occasionally with the left hand. The claimant was able to sit, stand, and walk for eight hours each during an eight-hour workday. The claimant was precluded from using the right hand to reach overhead or finger, and he was able occasionally reach in all other directions, handle and push/pull with the right hand. The claimant was able to frequently feel with the right hand, and he was able to continuously use the left hand to reach overhead and in all directions, handle, finger, feel, and push/pull. The claimant was able to continuously push/pull with the lower extremities and frequently climb stairs and ramps, balance, stoop, kneel, and crouch. He was precluded from climbing ladders or scaffolds and crawling. The claimant could engage in frequently exposure to unprotected heights and continuous exposure to moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. He was able to frequently operate a motor vehicle with appropriate modifications (Exhibit 10F).

The claimant's history of a craniotomy for brain lesion and decreased use of right upper extremity were considered and support a finding that the claimant's maximum residual functional capacity is for a reduced range of light work with the exertional and non-exertional limitations noted above. That is, the claimant is precluded from work requiring use of the right upper extremity to push and pull or perform bilateral manual dexterity. The finding that he can frequently feel with the right upper extremity is consistent with the evidence showing normal sensation. However, the evidence also documents that the claimant demonstrated improved grip strength in the right hand, but it was still weaker than the left (Exhibits 2F, 6F, 8F and 1OF). In the Function Report completed by the claimant in January 2013, he reported difficulty angling the razor to shave and grasping utensils (Exhibit 5E). Therefore, the claimant is precluded from crawling and climbing ladders, ropes or scaffolds. He is unable to reach overhead or finger with the right upper extremity. The claimant can occasionally reach in all other directions with the right upper extremity and occasionally handle with the right upper extremity. The claimant has reported difficulty raising his right arm above his head, which has been documented in the physical exams with Drs. Martino and Ove (Exhibit 6F). The claimant is also unable to perform work that would require him to hand write instructions or reports due to residual problems with his right dominant hand and difficulty using his left hand for writing. The undersigned finds that no additional physical exertional or non-exertional limitations are warranted. The undersigned has considered the claimant's activities of daily living in accessing his residual functional capacity including his work as a pizza delivery driver. The claimant testified at the supplemental hearing he was able to use the right hand to button and work a zipper with difficulty. The claimant also testified he was able to write with the left hand and use a computer mouse with the left hand. It is also noted that the MRI scans of the brain in 2011, 2012 and 2013 showed no recurrence of the claimant's brain tumor (Exhibits 5F and 8F).

The claimant's depression and ADD were considered and support the limitation for unskilled work including the ability to perform simple routine tasks involving no more than simple, short instructions and the ability to sustain concentration and attention for two-hour periods. The undersigned has included these limitations based on the claimant's complaints of memory problems, mood swings, depression/anxiety, and decreased ability to maintain focus and concentration after his surgery (Exhibits 12E, 2F, 4F, 6F and 9F). The claimant testified that he uses a GPS when working as a delivery driver due to memory problems. The mental limitations in the residual functional capacity accommodate the claimant's alleged residual cognitive problems. He has sought no formal mental health treatment or taken any psychotropic medications. The testing performed by

Dr. Crum's office showed attention, concentration and mental control was in the average range (Exhibit 12E). Dr. Davis also noted no significant deficits in the claimant's overall concentration or attention (Exhibit 9F).

Regarding the opinion evidence referenced in the record, the undersigned has given the consultative exam from Dr. Yager in Exhibit 10F some weight. It should be noted that the limitations in the claimant's right upper extremity referenced in Dr. Yager's narrative findings are somewhat inconsistent with the functional assessment completed by Dr. Yager and the claimant's acknowledged activities of daily living. In the narrative report, Dr. Yager indicated that the claimant would be limited to sedentary activities and noted that while lifting and carrying could be performed with the left hand, the claimant had difficulty using the right hand for fine motor skills. Dr. Yager in the narrative report noted the claimant stated he had tried to work at several jobs, but because of right hand issues, the claimant had been refused work. This is not consistent with the claimant's documented work as a pizza delivery driver, which is not substantial gainful activity but is ongoing. It is noted that the claimant was working in this position at the time of the consultative exam with Dr. Yager, and he has continued to work at this job through 2015. Dr. Yager noted that the claimant's motor strength was 4/5 in the right upper extremity, and the claimant was able to fixate his right hand. Dr. Yager's diagnostic impression included decreased use of the right upper extremity with some hyperreflexia and ataxia of the right hand. Dr. Yager also opined that the claimant was limited to frequent climbing of ramps and stairs, balancing, stooping, kneeling, and crouching because of decreased use of the right upper extremity. However, the medical evidence and narrative exam from Dr. Yager do not support these limitations. The claimant drives to deliver the pizza, and he testified at the supplemental hearing he was able to use the right hand to button and work a zipper, with some difficulty. The claimant stated he writes with left hand. The claimant uses a computer to access the internet and has a Facebook page. The claimant uses his left hand to work the computer mouse, but he testified to performing chores including small loads of laundry and preparing simple meals. The residual functional capacity above does not provide for limitations on balancing, stooping, kneeling or crouching with decreased use of right upper extremity since there is no evidence to support such limitations. Indeed, the record shows the claimant's complaints related to his right lower extremity

resolved after surgery (Exhibit 4F).

* * *

The representative objected to the consultative exam from Dr. Davis at the April 2015 hearing and in Exhibit 17B. At the hearing, the representative argued that Dr. Davis did not actually perform the testing at the exam and spent very little time with the claimant. The representative requested that Dr. Crum's testing in Exhibit 12E be given more weight. In response to this argument, the undersigned notes that some of the testing referenced in Dr. Crum's report was performed by others. Indeed, the WAIS-IV and WJ-III tests noted in Dr. Crum's report were administered by Brenda Howell, M.Ed. (Exhibit 12E). Moreover, there is no documentation in the report from Dr. Davis or the record to either support or discredit the assertions made by the representative that Dr. Davis spent very little time with the claimant during his evaluation. It is noted, however, that there are inconsistencies found within Dr. Davis' report that were provided to Dr. Davis by the claimant. The claimant reported to Dr. Davis that he was unable to maintain employment due to the lack of functioning in his right hand. He also reported anxiety over his financial situation. Despite this assertion, the claimant acknowledged to Dr. Davis that he had worked as a delivery driver at Papa John's Pizza for the past year. Dr. Davis' diagnostic impression included depression. Dr. Davis noted in the mental assessment that the claimant would have moderate restrictions in his ability to interact with the general public, co-workers and supervisors and in his ability to respond to usual work situations and changes in routine setting. He would also be moderately limited in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work related decisions. The undersigned has given the opinion from Dr. Davis some weight, but the evidence does not support the moderate social limitations referenced by Dr. Davis. The claimant is currently working as a pizza delivery driver, which is a job that requires him to operate a motor vehicle and interact with customers. This job is not performed at substantial gainful activity levels, but the work is not consistent with the limitations identified by Dr. Davis. The claimant also testified that he visits with friends several times a week.

With regard to Dr. Crum, the undersigned has given some weight and has accounted for the information in Dr. Crum's report

in the residual functional capacity that is consistent with the other available evidence. Dr. Crum's diagnosis was residual problems with attention due to brain tumor and limited use of his right hand. These diagnoses have been accommodated in the residual functional capacity as explained above.

The representative asserts that Dr. Crum's report indicates the claimant faces challenges to employment including reported forgetfulness in daily routines and problems with recall of learned material (Exhibit 17B). In contrast, the undersigned points out that Dr. Crum stated that the claimant's ability to sustain attention, concentration and exert mental control was in the average range. Dr. Crum also noted that the claimant's ability to process simple or routine visual material without making errors was in the average range when compared to his peers and noted the claimant's Processing Speed Index Score was 97. According to Dr. Crum, the claimant's total raw score of 50 on the Brown scale likely fell within the attention deficit range. Dr. Crum's report also noted that the claimant had T scores above 65 in Cluster 5 only, which addressed the area of utilizing working memory and accessing recall (Exhibit 12E). The mental residual functional capacity limitations have taken this finding into consideration in limiting the claimant to unskilled work with simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes. The claimant is able to sustain concentration and attention for two-hour periods.

The representative also noted the WAIS-IV test showed poor abstract thinking skills and poor short-term auditory memory (Exhibit 17B). However, the claimant's scores on the WAIS-IV were all in at least the average range (Exhibit 12E). Dr. Crum also noted on observation that the claimant demonstrated poor manual dexterity with the right hand and difficulty performing simple addition, subtraction and multiplication problems with speed due to using the left hand. The claimant also demonstrated difficulty writing simple sentences with speed due to using left hand (Exhibit 17B). These dexterity problems have been accommodated in the residual functional capacity above; however, Dr. Crum's report also noted the claimant said he enjoys playing video games (Exhibit 12E). The undersigned has limited the claimant to no use of the right upper extremity for pushing and pulling along with no crawling and no climbing of ladders, ropes or scaffolds. The claimant is also precluded from

work requiring bilateral manual dexterity, reaching overhead with the right upper extremity, fingering with the right upper extremity, and performing work requiring him to hand write instructions or reports. The claimant is able to occasionally reach in all other directions with the right upper extremity, occasionally handle with the right upper extremity; and frequently feel with the right upper extremity.

The undersigned notes that Dr. Crum's report also indicated that the results of the testing suggested strengths including the fact that he is "personable and interacts appropriately with authority figures." He noted the claimant demonstrated average Reading, Math and Writing skills on the WJ-III ACH. On the WAIS-IV, the claimant demonstrated verbal scores that are in the average range. The claimant also demonstrated the ability to apply logic and reasoning to spatial relationship problems along with above average non-verbal reasoning ability and above average ability to store and retrieve acquired knowledge. Dr. Crum also noted the claimant was motivated and goal oriented. According to Dr. Crum, the claimant had a valid driver's license and access to transportation, which would enable independence for school and work. Dr. Crum further noted the claimant had work experience indicating knowledge of employer expectations and basic work rules. As a result, the undersigned finds that the assertions made by the representative in Exhibit 17B regarding the report from Dr. Crum do not support a conclusion that the claimant is disabled.

The claimant's statements concerning his severe impairments and their impact on his ability to work are not entirely credible. The claimant has continued to work, albeit not at substantial gainful activity levels. He has shown improvement with use of the right upper extremity, and his ability to drive, perform some chores, and use a computer undermine his assertions of disability. Based on a review of the medical evidence of record, as well as the claimant's testimony at the hearing, the undersigned finds that the preponderance of the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptomatology, and that the claimant's statements regarding the severity, frequency, and duration of his symptomatology are overstated. Therefore, the undersigned finds that the claimant's allegation of inability to work because of the subjective complaints is not fully credible.

(Tr. 81-91).

## V.  DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §

423(a)(1)(E). A claimant is disabled if the claimant is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The impairment must be severe, making the claimant

unable to do the claimant's previous work or any other substantial gainful activity

that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§

404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing

significant and productive physical or mental duties [that] [i]s done (or intended)

for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential

evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) if not, whether the claimant has a severe impairment; (3) if so,
> whether the severe impairment meets or equals an impairment in
> the Listing of Impairment in the regulations; (4) if not, whether the
> claimant has the RFC to perform her past relevant work; and (5) if
> not, whether, in light of the claimant's RFC, age, education and
> work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per

curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips

v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The

claimant bears the burden of proving the first four steps, and if the claimant does

so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Barnhart asserts one ground in support of his contention that the ALJ erred in concluding that he was not entitled to benefits: he argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because it is not supported by the opinions of the medical doctors and because she did not delineate how she determined Barnhart's RFC. (Doc. 9 at

pp. 4-7). Conversely, the Commissioner asserts that the ALJ properly applied the five step sequential process in making her determination, including her assessment of Barnhart's RFC. (Doc. 15 at pp. 3-15). After concluding that Barnhart had the following severe impairments: status post craniotomy for brain lesion with decreased use of right upper extremity, major depressive disorder, and attention deficit disorder, the ALJ found him to have the RFC to perform a reduced range of light work, with certain limitations, set forth as follows:

> The claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 8 hours each during an 8 hour workday; no use of the right upper extremity to push and pull; no crawling; frequently climb ramps and stairs; no climbing of ladders, ropes or scaffolds; no requirement for bilateral manual dexterity; no reaching overhead with the right upper extremity; no fingering with the right upper extremity; occasionally reach in all other directions with the right upper extremity; occasionally handle with the right upper extremity; frequently feel with the right upper extremity; able to perform simple routine tasks involving no more than simple, short instructions; no requirement to hand write instructions or write reports; and able to sustain concentration and attention for 2 hour periods.

(Tr. 80, 81).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her

capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3. The ALJ is **exclusively** responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

Barnhart asserts that the RFC was not supported by substantial evidence because the ALJ did not give great weight to all the opinions of Dr. Blaine Crum, Ph. D., Dr. John Davis, Ph. D., and Dr. John Yager, M.D., did not adopt their opinions *in toto,* and did not include all of the restrictions assigned by them in formulating Barnhart's RFC. With regard to Dr. Crum, Barnhart argues that the ALJ's RFC assessment did not properly take into consideration his opinion that Barnhart "would face many challenges to employment due to reported forgetfulness in daily routines and problems in recall of learned material." (Doc. 9 at pp. 4-5). With regard to Dr. Yager, Barnhart argues that the ALJ did not properly consider his opinion that Barnhart "would only be capable of sedentary activities and would have difficulty computing using the right hand with fine motor

skills." (Doc. 9 at p. 5). Barnhart does not point to a specific position of Dr. Davis that he feels the ALJ did not take into consideration. Contrary to Barnhart's assertions, however, the ALJ did take into consideration the limitations noted by Dr. Crum and Dr. Yager and delineated in detail the reasons for each element of Barnhart's RFC. *See supra,* at pp. 8-15.

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

A review of the entire record reveals that the ALJ was presented with multiple opinions regarding Barnhart's limitations. In this case, as set forth above, the ALJ discussed the medical evidence in detail, including the weight accorded

to the medical opinion evidence and the grounds therefor. The ALJ also described the information provided by Barnhart in his Function Report and at the hearing concerning his limitations and activities, and she explained her reasons for finding that Barnhart's allegation of inability to work because of his subjective complaints was not entirely credible. The ALJ made reference to the medical findings, as well as other evidence, in assigning additional limitations to Barnhart's RFC, such as limiting the use of his right upper extremity and limiting him to simple routine tasks involving no more than simple, short instructions. *See* Tr. 81-91, 655-65. Having reviewed the evidence and considered the arguments made by Barnhart and being mindful of the admonishment that the reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner, the Court finds that the RFC assessment made by the ALJ was supported by substantial evidence. The opinions of Dr. Crum, Dr. Davis, and Dr. Yager, along with other evidence in the record, constitutes substantial evidence supporting the ALJ's RFC assessment, as well as her final decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 7**th** day of **February, 2018**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**